UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ANGELO RUOTOLO,

                              Plaintiff,

                                                Case No. 09-CV-7851 (KMK)

        -v-

FANNIE MAE, PATTY CONTI, PATTY CONTI          OPINION AND ORDER
REALTY, MARGARET STEWART, MARYLIN
VANAKEN,

                              Defendants.

Appearances:

Angelo Ruotolo
96 Pelham Drive
Cornwall, NY 12518
*Pro se Plaintiff*

Michael John Walsh
O'Melveny & Myers LLP
1625 Eye Street, NW
Washington, DC 20006
*Counsel for Defendant Fannie Mae*

Joseph A Catania , Jr.
Rebecca Grace Baldwin Manetllo
Tarshis, Catania, Liberth, Mahon & Milligram
One Corwin Court
P.O. Box 1479
Newburgh, NY 12550
*Counsel for Defendants Patty Conti, Margaret Stewart,*
*Marylin VanAken, and Patty Conti Realty*

KENNETH M. KARAS, District Judge:

        According to the allegations in his Second Amended Complaint (the "SAC"), pro se

Plaintiff Angelo Ruotolo hoped to purchase a home in foreclosure from Defendant Fannie Mae,

the owner of the property.  Plaintiff claims that he attempted to submit an all-cash offer of

$131,000 for the property, but Fannie Mae ultimately sold the property to someone else for $130,000.  (SAC ¶¶ 15, 15(a).)

Plaintiff attempts to make a federal case out of the failed real estate transaction. Plaintiff's SAC includes a series of wide-ranging allegations against Fannie Mae and various real estate professionals also involved in the property's sale, who are also named as defendants. These include allegations that all Defendants engaged in an unlawful antitrust conspiracy and that Fannie Mae violated various federal statutes, including the Sarbanes-Oxley Act of 2002 and the legislation that created the Troubled Asset Relief Program, when Fannie Mae "shortchanged the U.S. Treasury by delivering less than what the plaintiff offered."  (SAC ¶¶ 20, 21, 21(a).) Fannie Mae and the realtor defendants now separately move to dismiss nearly all of the claims. For the reasons below, the motions are granted, and the federal claims are dismissed.  Further, the Court declines to exercise jurisdiction over the few remaining state law claims.  Accordingly, the state law claims are also dismissed.

## I. Background

The following facts, alleged in the Second Amended Complaint, are taken as true for purposes of deciding the instant motions.  *See Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008).[1]

---

[1] In Plaintiff's opposition papers, he appears to have added several new facts to those alleged in the SAC, or at least he has added additional details to certain allegations.  (Pl. Mem. in Opp. to Fannie Mae Mot. to Dismiss 2 (making certain additional allegations regarding the primary real estate transaction at issue).)  When determining a motion to dismiss for failure to state a claim, a court is confined to the facts as pleaded in the complaint and any permissible attachments, and a court should not consider new facts alleged in moving papers.  *See CFAA Civic Ctr. Motors, Ltd. v. Mason St. Imp. Cars, Ltd.*, 387 F. Supp. 2d 378, 382 (S.D.N.Y. 2005) (refusing to consider new damages allegations alleged in moving papers and not in the plaintiff's complaint).  Nonetheless, the outcome here would not change were the Court to consider the additional facts in pro se Plaintiff's opposition papers.

According to the SAC, Plaintiff sought to purchase a single-family residential property at 14 Shivertown Road in New Paltz, New York ("Shivertown Road Property").  (SAC ¶ 3 & Ex. D.)  The Shivertown Road Property was offered for sale by Defendant Fannie Mae and brokered by Defendants Patty Conti, Margaret Stewart, and Marilyn VanAken, all of the firm Defendant Patti Conty Realty (the "Realtor Defendants").  (*Id.*)

On May 26, 2009, Plaintiff submitted an offer for $130,000, with 20 percent down and 80 percent to be financed by a mortgage, but this offer was not accepted.  (SAC ¶ 23 n.*.)  Later, on an unspecified date, Plaintiff allegedly submitted an all-cash offer of $131,000 for the Shivertown Road Property, and this offer "was either not communicated by real estate brokers to Fannie Mae, or intentionally communicated late" to Fannie Mae.  (SAC ¶ 7.)  Instead, on June 20, 2009, Fannie Mae accepted another buyer's bid of $130,000, and the Shivertown Road Property closed on July 9, 2009.  (SAC ¶ 18(a).)  As a result of his unsuccessful efforts to purchase the Shivertown Road Property, Plaintiff alleges that he suffered losses from foregone rental income in an amount exceeding $500,000.  (SAC ¶ 19.)

Plaintiff also alleges that he unsuccessfully attempted to purchase two additional properties owned by Fannie Mae: one at 314 Hudson Street, Cornwall, New York, (SAC ¶ 18(c)), and another at 377 Grove Street, Brooklyn, New York, (SAC ¶ 18(d)).  Each of these properties was allegedly sold for an amount less than the all-cash offer made by Plaintiff.  (SAC ¶¶ 18(c), 18(d).)  Plaintiff alleges that both of these properties were offered for sale by Fannie Mae, but he does not specify whether the named Realtor Defendants were also involved in these transactions.  (*Id.*)  Plaintiff also does not specify whether he incurred any monetary damages as a result of his failure to purchase these properties.

On September 11, 2009, Plaintiff filed a complaint in this Court.  (Dkt. No. 1.)  After twice amending the Complaint with leave of the Court, Plaintiff now states six causes of action. (SAC ¶¶ 22–27.)  First, Plaintiff alleges that Defendants entered into an unlawful conspiracy to restrain trade, in violation of federal and state antitrust laws.  (SAC ¶ 22.)  Second, Plaintiff alleges that Defendants defrauded the U.S. Government, and he brings a claim pursuant to the Fraud Enforcement and Recovery Act, Pub. L. 111-21, 123 Stat. 1617 (2009), a statute that amended, among other laws, the False Claims Act.  (SAC ¶ 23.)  Third, Plaintiff alleges that Defendant Fannie Mae received funds under the Troubled Asset Relief Program (TARP), a government program created in 2008, Pub. L. 110-343, 122 Stat. 3765 (2008), and that Fannie Mae's actions violated various provisions of that Act.  (SAC ¶ 24.)  Fourth, Plaintiff contends that the Realtor Defendants breached a state law fiduciary duty they owed to him.  (SAC ¶ 25.) Fifth, Plaintiff contends that Defendants engaged in unfair and deceptive business practices, in violation of New York General Business Laws §§ 349 and 350.  (SAC ¶¶ 26(a), 27(a).)  Finally, though not explicitly listed as a cause of action, Plaintiff's SAC can be construed as attempting to state a claim that Fannie Mae violated various provisions of the Sarbanes-Oxley Act of 2002, Pub. L. 107-204, 116 Stat. 745 (2002).[2]  (SAC ¶¶ 18, 18(e), 18(f).)

Defendant Fannie Mae has moved under Federal Rule of Civil Procedure 12(b)(6) to dismiss all claims against it for failure to state a claim.  (Dkt. No. 36.)  Separately, the Realtor Defendants have moved under the same federal rule to dismiss nearly all claims against them for

---

[2] Plaintiff's SAC also appears at first glance to state a claim for violations of the Federal Trade Commission Act and 18 U.S.C. § 1346, the federal honest services mail fraud statute, (SAC ¶¶ 26–27), but he concedes there is no private right of action under either of those provisions and has converted them to claims under New York General Business Law §§ 349 and 350, (SAC ¶¶ 26(a), 27(a)); *accord Washington v. U.S. Tennis Ass'n*, 290 F. Supp. 2d 323, 329 (E.D.N.Y. 2003) ("[T]he Federal Trade Commission Act . . . does not create a private right of action for damages.").

4

failure to state a claim.  (Dkt. No. 34.)  The Court considers both of these motions in this
Opinion.

II. Discussion

A. Standard of Review

"On a Rule 12(b)(6) motion to dismiss a complaint, the court must accept a plaintiff's
factual allegations as true and draw all reasonable inferences in [the plaintiff's] favor."  *Gonzalez
v. Caballero*, 572 F. Supp. 2d 463, 466 (S.D.N.Y. 2008); *see also Ruotolo*, 514 F.3d at 188 ("We
review *de novo* a district court's dismissal of a complaint pursuant to Rule 12(b)(6), accepting all
factual allegations in the complaint and drawing all reasonable inferences in the plaintiff's
favor." (internal quotation marks omitted)).  In adjudicating a Rule 12(b)(6) motion, a district
court "'confines its consideration to facts stated on the face of the complaint, in documents
appended to the complaint or incorporated in the complaint by reference, and to matters of which
judicial notice may be taken.'"  *Meisel v. Grunberg*, 651 F. Supp. 2d 98, 107 (S.D.N.Y. 2009)
(alteration omitted) (quoting *Leonard F. v. Isr. Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.
1999)).

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed
factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief
requires more than labels and conclusions, and a formulaic recitation of the elements of a cause
of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (alteration,
citations, and internal quotation marks omitted).  Instead, the Supreme Court has emphasized
that "[f]actual allegations must be enough to raise a right to relief above the speculative level,"
*id.*, and that "once a claim has been stated adequately, it may be supported by showing any set of
facts consistent with the allegations in the complaint," *id.* at 563.  A plaintiff must allege

5

"enough facts to state a claim to relief that is plausible on its face." *Id.* at 570.  If a plaintiff "ha[s] not nudged [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Id.*; *see also Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009) ("Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.  But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged — but it has not 'show[n]' — 'that the pleader is entitled to relief.'" (quoting Fed. R. Civ. P. 8(a)(2)) (alteration in original) (citation omitted)).

Finally, "[i]t is well-established that the submissions of a *pro se* litigant must be construed liberally and interpreted to raise the strongest arguments that they suggest." *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006) (per curiam) (emphasis omitted) (internal quotation marks omitted).  However, even a pro se party is not exempt from "compliance with relevant rules of procedural and substantive law." *Id.* at 477 (internal quotation marks omitted).

B. Analysis

1. Overall Considerations

At the outset, it is useful to step back from the details of each claim and notice that Plaintiff's theory of the case as a whole is contradictory.  This does not mean that the case is an automatic non-starter — plaintiffs are entitled to plead multiple theories in the alternative — but the contradictory nature of the very heart of the case does make the entire case somewhat implausible from the beginning.  This is important because making a threshold showing of plausibility is the oft-repeated requirement of surviving a motion to dismiss.  *See Twombly*, 550 U.S. at 554–63; *see also Mary Jo C. v. N.Y. State & Local Ret. Sys.*, --- F.3d ----, No. 11-2215,

2013 WL 322879, at *3 (2d Cir. Jan. 29, 2013) ("The complaint must state a claim that is plausible on its face.").  The tension arises because the necessary result of violations of the different provisions invoked by Plaintiff is that Fannie Mae was simultaneously making exorbitant profits but also shortchanging the U.S. Treasury of funds it could have recovered but for various legal violations.  It seems implausible that Fannie Mae was making and losing money on the same transactions.

On the one hand, Plaintiff alleges that Defendants engaged in an unlawful antitrust conspiracy, including by fixing prices and rigging bids.  (SAC ¶¶ 22, 22(a) n.**.)  It follows necessarily from this theory that the ultimate evil of which Plaintiff complains is the elimination of competition and resultant higher prices for consumers and monopoly profits for sellers: these are the paradigmatic harms that the antitrust laws have long sought to prevent.  *See United States v. Socony-Vacuum Oil Co.*, 310 U.S. 150, 223 (1940); *see also* Antitrust Div., U.S. Dep't of Justice, *Price Fixing, Bid Rigging, and Market Allocation Schemes: What They Are and What to Look For*, at 1, http://www.justice.gov/atr/public/guidelines/211578.pdf ("When competitors collude, prices are inflated and the customer is cheated.").  Thus, if Plaintiff is correct on his antitrust claims, then there must be harm to *competition*; consumers would have paid more than they would have in a competitive market; and the Realtor Defendants and Fannie Mae would have profited more than they would have in a market with free and fair competition.  *See Atl. Richfield Co. v. USA Petroleum Co.*, 495 U.S. 328, 338 (1990) ("The antitrust laws were enacted for 'the protection of *competition* . . . .'") (quoting *Brown Shoe Co. v. United States*, 370 U.S. 294, 320 (1962)) (emphasis in original)); *see generally* Ernest Gellhorn & William Kovacic, *Antitrust Law and Economics in a Nutshell* 42–71 (4th ed. 1994) (explaining profit-maximizing behavior in competitive and non-competitive environments).

On the other hand, Plaintiff alleges statutory violations stemming from Fannie Mae's alleged acceptance of a lower bid on the property at issue, and this acceptance purportedly "cheated" the U.S. Treasury out of a better return on its alleged investment in Fannie Mae. (SAC ¶ 23(a).)  Indeed, given the number of homes Fannie Mae sells in foreclosure, Plaintiff contends, albeit without *any* factual support, that "the amount of money that Fannie Mae is shortchanging the U.S. Treasury isn't just one or a few thousand dollars . . . [but the amount] could total in the hundreds of millions of dollars."  (*Id.*)  Hence the tension on the face of the SAC.

Thus, when the SAC here is read "'objectively and as a whole,'" *Ruotolo,* 514 F.3d at 190 (quoting *Ezekwo v. N.Y.C. Health & Hosp. Corp.*, 940 F.2d 775, 781 (2d Cir. 1991)), the factual allegations do not fit together in a way that would help Plaintiff make the threshold showing of plausibility required to survive a motion to dismiss.  Still, the Court addresses each claim on its own merits.

2. First Cause of Action: Antitrust Violations

Turning to the specific causes of action, Plaintiff first contends that Defendants violated the "Federal Antitrust provisions including but not limited to the Sherman Act which specifically prohibits agreements between competitors to engage in price fixing, rig bidding [*sic*], or allocation of customers."  (SAC ¶ 22.)  Even taking all of the allegations in the SAC as true, Plaintiff has failed to state an antitrust claim.

At the threshold, Plaintiff cannot actually sue directly under the Sherman Act, 15 U.S.C. § 1, because "Section 1 of the Sherman Act does not itself provide a private right of action."  *In re Publ'n Paper Antitrust Litig.*, 690 F.3d 51, 62 (2d Cir. 2012)  Instead, the right to sue "is established by section 4 of the Clayton Act, which authorizes private suits by 'any person who

8

shall be injured in his business or property by reason of anything forbidden in the antitrust laws.'" *Id.* (quoting 15 U.S.C. § 15).  Because Plaintiff is proceeding pro se, the Court will construe the SAC to invoke the private-right-of-action provisions of the Clayton Act.  *See Greene v. Conn. Bd. of Accountancy*, No. 00-CV-599, 2001 WL 286855, at *2 (D. Conn. Mar. 20, 2001) (construing a pro se plaintiff's antitrust claims to have been brought pursuant to the Clayton Act).

To prevail on a claim stating a Sherman Act violation, a private plaintiff "must allege 'a combination or some form of concerted action between at least two legally distinct economic entities' that 'constituted an unreasonable restraint of trade either per se or under the rule of reason.'"  *Primetime 24 Joint Venture v. NBC*, 219 F.3d 92, 103 (2d Cir. 2000) (quoting *Capital Imaging Assocs. v. Mohawk Valley Med. Assocs.*, 996 F.2d 537, 542 (2d Cir. 1993)).  Additionally, "a plaintiff must independently show 'antitrust injury'" — also called "antitrust standing" — because "'a plaintiff can recover only if the loss stems from a competition-reducing aspect or effect of the defendant's behavior."  *Id.* (quoting *Atl. Richfield Co.*, 495 U.S. at 344); *see also Stolow v. Greg Manning Auctions Inc.*, 258 F. Supp. 2d 236, 243 (S.D.N.Y. 2003) (same).  Here, Plaintiff's SAC alleges neither a plausible antitrust violation nor a requisite antitrust injury.

### a. Substantive Violations

In attempting to make out his antitrust claim, Plaintiff alleges there was some sort of "conspiracy between Fannie Mae personnel and Fanne Mae brokers."  (SAC ¶ 18(a).)  The goals and scope of the conspiracy are not stated with any precision, but Plaintiff asks the Court to infer some manner of conspiracy on the basis of the "extraordinary speed with which the subject property closed"; the "repeated indifference and disregard of Plaintiff's multiple notices to

Fannie Mae before closing, that the realtors had not submitted to Fannie Mae one or more of the Plaintiff's offers"; the "fact that Fannie Mae has continued to carry out business with Conti realty, even though Conti was allegedly reprimanded for failing to submit [P]laintiff's offer"; and allegations pertaining to two other instances where Plaintiff allegedly submitted higher bids than Fannie Mae accepted.  (SAC ¶¶ 18(a)–(g).)  Plaintiff contends that these facts show that the Defendants combined "to engage in bid rigging, bid suppression and price fixing in order to achieve a predetermined outcome as to the successful bidder, and thereby limit or eliminate competing bids."  (SAC ¶ 14.)  These factual allegations are insufficient to state a plausible antitrust conspiracy between Fannie Mae and the Realtor Defendants.

"In order to establish a conspiracy in violation of § 1 [of the Sherman Act], whether horizontal, vertical, or both, proof of joint or concerted action is required."  *Anderson News, L.L.C. v. Am. Media, Inc.*, 680 F.3d 162, 183 (2d Cir. 2012).  To prove the existence of this unlawful conspiracy, "'the antitrust plaintiff should present direct or circumstantial evidence that reasonably tends to prove that the [defendant] and others had a conscious commitment to a common scheme designed to achieve an unlawful objective.'"  *Id.* at 184 (quoting *Monsanto Co. v. Spray-Rite Serv. Corp.*, 465 U.S. 752, 764 (1984)) (emphasis omitted).  Accordingly, "[a]t the pleading stage, a complaint claiming conspiracy, to be plausible, must plead 'enough factual matter (taken as true) to suggest that an agreement was made,' *i.e.*, it must provide 'some factual context suggesting [that the parties reached an] agreement,' not facts that would be 'merely consistent' with an agreement."  *Id.* (quoting *Twombly*, 550 U.S. at 556, 549, 557).

Here, Plaintiff has not pleaded facts that plausibly show that Defendants had a conscious commitment to a common scheme designed to achieve an unlawful objective.  Indeed, it is implausible to think that Fannie Mae would conspire *with its own sales agents* to keep sale

10

prices low on houses it owns and is selling in foreclosure, thereby *reducing* its own profits. Indeed, it is not even clear to the Court what the alleged agreement is supposed to look like.  Did Defendants conspire just to refuse offers from Plaintiff alone?  If so, that does not state an antitrust claim, because the "antitrust laws were enacted for 'the protection of *competition*,'" not the protection of a single market participant like Plaintiff.  *Atl. Richfield Co.*, 495 U.S. at 338 (quoting *Brown Shoe*, 370 U.S. at 320) (emphasis in original).  Or is the conspiracy broader, as Plaintiff occasionally implies with such unsupported assertions that the amount Fannie Mae "is shortchanging" the Treasury "could total in the hundreds of millions of dollars," (SAC ¶ 23(a))?  If so, then the SAC also fails to state claim, as it contains no specific allegations regarding property sales not involving Plaintiff.  To survive a motion to dismiss, "[f]actual allegations must be enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.

The Court recognizes that the allegation that Fannie Mae is not maximizing profits is not absolutely fatal to an antitrust claim.  There are several accepted antitrust theories, such as predatory pricing, that do involve sellers incurring short-term losses — but these strategies are employed with the ultimate goal of eliminating competitors and then raising prices in the long-run.  *See Barry Wright Corp. v. ITT Grinnell Corp.*, 724 F.2d 227, 231 (1st Cir. 1983) (Breyer, J.) ("[T]here is general agreement that a profit-maximizing firm might sometimes find it rational to engage in predatory pricing; it might do so if it knows (1) that it can cut prices deeply enough to outlast and to drive away all competitors, and (2) that it can then raise prices high enough to recoup lost profits (and then some) before new competitors again enter the market.").  The reason these doctrines are not implicated here is that Plaintiff has not even attempted to state a claim for this sort of antitrust violation, because there is no articulation of how Fannie Mae stands eventually to recoup any profits it loses by allegedly conspiring to accept bids lower than

11

the maximum it has available.

Plaintiff uses terms like "bid rigging" and "bid suppression" to describe the alleged conspiracy, but these terms of art do not apply to the factual allegations described. Bid rigging is "[a]ny agreement *between competitors* pursuant to which contract offers are to be submitted to or withheld from a third party." *United States v. Portsmouth Paving Corp.*, 694 F.2d 312, 325 (4th Cir. 1982) (emphasis added). Bid rigging is thus merely a species of horizontal price fixing among competitors. *See Philip Morris Inc. v. Heinrich*, No. 95-CV-328, 1996 WL 363156, at *9 (S.D.N.Y. June 28, 1996) ("Courts have specifically classified bid-rigging as a form of price fixing that constitutes a per se violation."). These doctrines cannot apply to this case, because Plaintiff has alleged that Fannie Mae is part of the conspiracy, even though it has a buyer-seller, vertical relationship with the Realtor Defendants. Fannie Mae's alleged inclusion of the Realtor Defendants in the scheme entirely defeats the point of fixing prices or rigging bids, making the entire scheme implausible.

But even assuming that Plaintiff has stated enough facts for the Court to infer an antecedent agreement between all Defendants to take some concerted action with respect to Plaintiff's bids on the property at issue, Plaintiff's claim still fails to meet other substantive legal requirements. For instance, because the antitrust laws are focused on preserving robust competition, "an antitrust complaint must adequately . . . define the relevant product market." *World Wrestling Entm't, Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 517 (S.D.N.Y. 2006) (alteration in original) (quoting *Rock TV Entm't, Inc. v. Time Warner, Inc.*, No. 97-CV-161, 1998 WL 37498, at *2 (S.D.N.Y. Jan. 30, 1998)). But this requirement is simply absent from the SAC. And because the scope of the conspiracy is so ill-defined — as mentioned above, the claim here is both at times quite individualized but also exceedingly far-ranging — it is

12

impossible for the Court to guess the relevant market.  Therefore, Plaintiff has failed to state a claim for a substantive violation of the antitrust laws.[3]

b. Antitrust Injury

Separately, an antitrust plaintiff must "allege standing to bring suit.  A plaintiff only has standing if he suffered an antitrust injury."  *Stolow*, 258 F. Supp. 2d at 243.  An antitrust injury is "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Atl. Richfield*, 495 U.S. at 334 (internal quotation marks omitted).  As relevant here, this means that "[a]n antitrust plaintiff must allege not only cognizable harm to [him]self, but an adverse effect on competition market-wide."  *Todd v. Exxon Corp.*, 275 F.3d 191, 213 (2d Cir. 2001).  Thus, a plaintiff "bears the initial burden of showing that the challenged action has had an *actual* adverse effect on competition as a whole in the relevant market; to prove it has been harmed as an individual competitor will not suffice."  *Capital Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 543 (2d Cir. 1993).  This burden applies no matter what type of violation is alleged, for "the mere presence of a substantive Sherman Act section 1 violation . . . does not by itself bestow on any plaintiff a private right of action for damages."  *Ind. Grocery, Inc. v. Super Valu Stores, Inc.*, 864 F.2d 1409, 1419 (7th Cir. 1989).

Here, Plaintiff does not meet this requirement.  Plaintiff's alleged damages are related solely to the potential rental income that he supposedly lost because he did not succeed in

---

[3] Plaintiff also brings a state law antitrust claim under the Donnelly Act.  (SAC ¶ 22(a).) This claim must be dismissed for the same reasons as the federal claim.  *See X.L.O. Concrete Corp. v. Rivergate Corp.*, 634 N.E.2d 158, 161 (N.Y. 1994) (Donnelly Act "should generally be construed in light of Federal precedent" (internal quotation marks omitted)); *see also Kramer v. Pollock-Krasner Found.*, 890 F. Supp. 250, 254 (S.D.N.Y. 1995) (holding that because the New York courts interpret New York antitrust laws essentially in parity with federal antitrust law, the court "analyze[d] the Sherman and Donnelly Act claims together").

purchasing the house he sought to buy.  (SAC ¶ 19.)  Plaintiff does not allege anywhere how the alleged conspiracy harmed competition as a whole — nor does the Court see how Plaintiff could so allege.  Indeed, as mentioned in the previous subsection, it is not even clear what the relevant market is, and therefore there are no allegations regarding what segment of competition could possibly be harmed by the alleged agreement.  Therefore, Plaintiff lacks standing to allege an antitrust violation.  *See Greene*, 2001 WL 286855, at *4 (Even assuming that "the defendants' concerted actions may have prevented the plaintiff from participating in the audit bidding process, [the alleged actions] did not result in injury to the market as a whole.")

### 3. Second Cause of Action: FERA Violations

Plaintiff, in a cause of action that appears to apply against only Defendant Fannie Mae, next contends that Fannie Mae is "shortchanging the U.S. Treasury" in violation of the Fraud Enforcement and Recovery Act of 2009 ("FERA").  (SAC ¶ 23(a).)  FERA contained amendments to the False Claims Act, and the False Claims Act in turn permits civil actions by private persons for violations of 31 U.S.C. § 3729.  *See* 31 U.S.C. § 3730(b).  By law, such actions can be brought only "in the name of the Government," *id.* § 3730(b)(1), and the initiation of such a suit must begin with certain specific procedures: "A copy of the complaint and written disclosure of substantially all material evidence and information the person possesses shall be served on the Government pursuant to Rule 4[(i)] of the Federal Rules of Civil Procedure.  The complaint shall be filed in camera, shall remain under seal for at least 60 days, and shall not be served on the defendant until the court so orders," *id.* § 3730(b)(2).  Under this statute, private persons who attempt to initiate such a suit are not actually plaintiffs but rather are deemed "relators," and "[b]ecause relators lack a personal interest in False Claims Act *qui tam* actions, [the Second Circuit has] conclude[d] that they are not entitled to proceed *pro se*."  *United States*

14

*ex rel. Mergent Servs. v. Flaherty*, 540 F.3d 89, 93 (2d Cir. 2008).

Plaintiff's FERA claim must be dismissed because Plaintiff has not met these requirements.  Plaintiff is currently proceeding pro se, which the Second Circuit has expressly prohibited.  *See id.*  This alone requires dismissal.  Further, while Plaintiff contends that he "did file the amended complaint under seal" and that he also "provided copies to the Special Inspector for Troubled Asset Relief Program (SIGTARP) and the Department of Justice," there is no allegation that Plaintiff actually served the proper institutions of the Federal Government according to Federal Rule of Civil Procedure 4(i), as required by statute.  *See* 31 U.S.C. § 3730(b)(2).  This, too, requires dismissal.  *See United States ex rel. Pilon v. Martin Marietta Corp.*, 60 F.3d 995, 999 (2d Cir. 1995) (dismissal with prejudice appropriate in False Claims Act action where the complaint was not filed under seal and the Government was not properly served; "[t]hat the government and Defendants may have been aware of the substance of the [purported relators'] allegations does not diminish the consequences of the [purported relators'] failure to comply with the statutory requirements").

### 4. Third Cause of Action: TARP Claims

Next, Plaintiff purports to sue Fannie Mae under the 2008 statute that created the Troubled Asset Relief Program, or TARP, which is now codified at 12 U.S.C. § 5211 *et seq.* Plaintiff contends that he should be able to sue Fannie Mae under this provision because the statute "places an onus on Fannie Mae to act responsibly and prudently with Taxpayer funds." (Pl. Aff. in Opp. to Fannie Mae Mot. to Dismiss at 13.)  Perhaps Plaintiff's statement is true as a purely legal or philosophical matter, but the presence of an alleged legal violation does not necessarily mean that a private plaintiff may sue a TARP recipient under that statute and recover

damages.  In fact, it is clear that a private plaintiff cannot do so.[4]

Section 5211(a)(1) states that the Treasury Secretary "is authorized to establish" the TARP to "purchase, and to make and fund commitments to purchase, troubled assets from any financial institution, on such terms and conditions as are determined by the Secretary, and in accordance with this chapter and the policies and procedures developed and published by the Secretary."  12 U.S.C. § 5211(a)(1).  The remainder of the statute spells out additional terms and delegates authority to the Treasury Secretary to implement the legislation.  *Id.* § 5211–41.  Crucially, the statute explicitly provides for judicial review of "[a]ctions by the Secretary pursuant to the authority of this chapter," but it does not specify that private plaintiffs may sue for violations of the statute.  *See id.* § 5229(a).  There is therefore no argument that there is an express right of action by private plaintiffs against financial institutions, and Plaintiff does not attempt to press this argument.  Rather, relying on several decades-old Supreme Court cases, Plaintiff contends that TARP contains an implied private right of action.  (Pl. Aff. in Opp. to Fannie Mae Mot. to Dismiss at 13.)

Plaintiff's argument fails.  "'[P]rivate rights of action to enforce federal law must be created by Congress' and the statute in question must evidence congressional intent to create a private right of action."  *Abrahams v. MTA Long Island Bus*, 644 F.3d 110, 117 (2d Cir. 2011) (quoting *Alexander v. Sandoval*, 532 U.S. 275, 286 (2001)).  In the Second Circuit, "[t]o discover whether Congress intended that the Act be enforceable by a private right of action, [courts] look to the 'text and structure' of the statute."  *Id.* at 118 (quoting *George v. N.Y.C. Dep't of City Planning*, 436 F.3d 102, 103 (2d Cir. 2006)) (first alteration in original).

---

[4] Further, it appears that Fannie Mae did not actually receive any TARP funds from the Federal Government.  (Fannie Mae Mem. at 11 n.7) (citing Fed'l Nat'l Mortgage Ass'n, Annual Report (Form 10-K), at 34 (Feb. 29, 2012)).  Even though the Court probably could judicially notice this fact, it is irrelevant, because Plaintiff's claim fails for other, independent reasons.

Here, nothing about the statute evinces congressional intent to create a private right of action against TARP fund recipients.  Indeed, as the Eleventh Circuit noted in an unpublished decision, the fact that Congress affirmatively created a right of action against the Secretary strongly implies that Congress did *not* wish to create a right of action against the recipients of federal funds.  *See Thomas v. Pentagon Fed. Credit Union*, 393 F. App'x 635, 638 (11th Cir. 2010).  This is consistent with the Supreme Court's statement in *Sandoval* that "[t]he express provision of one method of enforcing a substantive rule suggests that Congress intended to preclude others."  532 U.S. at 290; *see also Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 19–20 (1979) ("[It is an elemental canon of statutory construction that where a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it. . . . In view of the[] express provisions for enforcing [the statute at issue], it is highly improbable that Congress absentmindedly forgot to mention an intended private action." (internal quotation marks omitted)).

Accordingly, the TARP claims against Fannie Mae are dismissed because the statute contains no private right of action against TARP fund recipients.  This is also the conclusion reached by numerous other courts to have considered the issue.  *See, e.g., Thomas*, 393 F. App'x at 638; *Citron v. Wachovia Mortg. Corp.*, No. 10-CV-1790, 2013 WL 523623, at *14, --- F. Supp. 2d ---- (M.D. Fla. Feb. 12, 2013) (holding that there is no provision granting a plaintiff a private right of action under TARP); *Robinson v.Wells Fargo Bank, N.A.*, No. 09-CV-2066, 2010 WL 2534192, at *6-7 (D. Ariz. June 18, 2010) (same); *Logan v. U.S. Bank Nat'l Ass'n*, No. 09-CV-8950, 2010 WL 1444878, at *9 (C.D. Cal. Apr. 12, 2010) (same); *Bank v. Homes By Williamscraft, Inc.*, No. 09-CV-91, 2009 WL 3753585, at *2 (N.D. Ga. Nov. 6, 2009) (same); *Pantoja v. Countrywide Home Loans, Inc.*, 640 F. Supp. 2d 1177, 1185 (N.D. Cal. 2009) (same).

17

5. Unspecified Cause of Action: Violations of the Sarbanes-Oxley Act of 2002

At a few points in the SAC, Plaintiff mentions his belief that Fannie Mae has failed to comply with the requirements of the Sarbanes-Oxley Act of 2002, or "SOX." (SAC ¶¶ 18 (alleging that "Fannie Mae was required to conduct a thorough investigation before closing on the subject property, pursuant to Sarbanes Oxley legislation"); 18(e) (alleging the "repeated failure by Fannie Mae to comply with Sarbanes Oxley legislation which mandates that Fannie Mae perform a fraud risk assessment and evaluate internal controls to prevent and detect fraud"); 18(f) (alleging the "repeated indifference and disregard by Fannie Mae to comply with Sarbanes Oxley").) However, the SAC contains no specific claim for relief based on a violation of any provision of SOX. Nonetheless, to the extent the SAC can be construed to attempt to state a claim for violation of any SOX provision, those claims are dismissed.

While the Court is mindful of the requirement that it broadly construe pro se pleadings, "a pro se plaintiff must support his claims with 'specific and detailed factual allegations, not stated in wholly conclusory terms.'" *Wightman-Cervantes v. ACLU*, No. 06-CV-4708, 2007 WL 1805483, at *1 (S.D.N.Y. June 25, 2007) (quoting *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir. 2000)). Even from pro se plaintiffs, "[b]ald assertions and conclusions of law are not adequate to withstand a motion to dismiss." *Wilson v. Dalene*, 699 F. Supp. 2d 534, 554 (E.D.N.Y. 2010) (internal quotation marks omitted).

Here, the SAC's passing broadsides regarding Fannie Mae's supposed violations of SOX are the very definition of the kind of conclusory assertions that are insufficient to survive a motion to dismiss, as there are no facts alleged whatsoever that have anything to do with the purported violations of SOX. In any event, there are only two express private rights of action in the legislation, and neither provision is related to the allegations contained in this case. *See* 15

18

U.S.C. § 7244(a)(2)(B) (private right of action to enforce prohibition on certain kinds of insider trading); 18 U.S.C. § 1514A(b) (private right of action to enforce prohibition on terminating whistleblowers); *see also* Robert F. Serio & Matthew S. Kahn, *Private Rights of Action and the Sarbanes-Oxley Act of 2002*, 38 Sec. Reg. & L. Rep. 668–71 (2006) (discussing the limited private rights of action in the Act); *cf. Cohen v. Viray*, 622 F.3d 188, 193 (2d Cir. 2010) (holding that there is no implied private right of action under 15 U.S.C. § 7243, another provision of SOX).  Therefore, there is no private of action under SOX for Plaintiff to bring any claim under that statute.

Accordingly, to the extent the SAC attempts to state a claim under SOX, that claim is dismissed.

### 6. Defendants' Motions to Dismiss Were Timely

Finally, in his opposition, Plaintiff contends that Defendants' Motions were untimely. He gives two reasons, both of which are without merit.

First, in the Court's Scheduling Order of April 3, 2012, Defendants were to file and serve their Motions to Dismiss by no later than May 11, 2012.  (Dkt. No. 32.)  Plaintiff contends that Defendants missed this deadline because he did not receive hard copies in the mail until three days after May 11, 2012, though Plaintiff acknowledges that the Motions were postmarked on time.  (Pl. Mem. in Opp. to Realtor Def. Mot. to Dismiss 13.)  Indeed, not only were both Motions mailed on May 11, 2012, but they were also electronically filed by ECF on that date. (Dkt. Nos. 34, 36.)  This was in full compliance with the Court's order, the Federal Rules of Civil Procedure, and the Local Rules of this District.  *See* Fed. R. Civ. P. 5 (describing filing and service requirements); Local Civ. R. 5.2, 6.1 (same, under Local Rules).

Plaintiff's citation of *Baldwin County Welcome Center v. Brown*, 466 U.S. 147 (1984), for the proposition that the filings were nevertheless untimely is creative but inapt. In that case, the Supreme Court, relying on what is now Federal Rule of Civil Procedure 6(d), recognized that, when an official notice of a government action is mailed to an individual, the presumed date of receipt is three days from the date of mailing. *Id.* at 148 & n.1. The relevant Rule states that "[w]hen a party may or must act within a specified time after service and service is made [by mail], 3 days are added after the period would otherwise expire." Fed. R. Civ. P. 6(d). The implication is that when the *recipient* of a piece of mail must act within a specified time of the *sender's* service, then the recipient is presumed to have received the sender's notice three days after the sender mails the notice. *See Payan v. Aramark Mgmt. Servs. Ltd. P'ship*, 495 F.3d 1119, 1122 (9th Cir. 2007) (relying on *Baldwin* and holding that, for purposes of a 90-day window to initiate a federal lawsuit under Title VII, a notice of right to sue letter from the EEOC is presumed to have been received three days after the EEOC's mailing where date of actual receipt is unknown). This legal rule has nothing to do with whether the sender's notice itself was timely filed when it is the *sender's* deadline that is being calculated, so it does not apply here.

Second, Plaintiff contends the Motions to Dismiss were untimely because they were not filed within 21 days of the service of the SAC, as specified by Federal Rule of Civil Procedure 12(a). This argument fails because the Court, by Order, explicitly extended the time for Defendants to file their Motions, (Dkt. No. 32), and the Federal Rules allow for such extensions, *see* Fed. R. Civ. P. 6(b).

Accordingly, the motions were timely, and they are properly considered by this Court.

C. Effect of Dismissing All Federal Claims

The remaining causes of action are brought exclusively brought under state law. Namely, as a fourth cause of action, Plaintiff contends that the Realtor Defendants breached the state law fiduciary duties they owed Plaintiff as his real estate agents.  (SAC ¶ 25.)  As a fifth cause of action, Plaintiff claims that Defendants violated New York General Business Law § 349, which makes unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service" in New York state, as well as § 350, which prohibits false advertising.[5]  *See* N.Y. Gen. Bus. Law §§ 349(a), 350.  The Court declines to exercise jurisdiction over these claims.[6]

When the federal claims are dismissed in a case initially presenting both federal and state law claims, the Court has discretion either to exercise supplemental jurisdiction and adjudicate the state law claims in federal court or to dismiss the case and allow the state law claims to be litigated in state court.  *See* 28 U.S.C. § 1367(c) (providing that a district court "may decline to exercise supplemental jurisdiction" over a claim over which it would not normally have original jurisdiction when "the district court has dismissed all claims over which it has original

----

[5] Initially, Plaintiff's fifth cause of action claimed Defendants violated the Federal Trade Commission Act, 15 U.S.C. §§ 41–58, and his sixth cause of action claimed Defendants violated the "Honest Services Doctrine as enacted by Congress in 1988," which is codified at 18 U.S.C. § 1346.  (SAC ¶¶ 26, 27.)  However, Plaintiff has voluntarily withdrawn those claims after conceding that neither statute contains a private right of action.  (SAC ¶¶ 26(a), 27(a).)

[6] The breach of fiduciary duty claims are against only the Realtor Defendants, New York residents who are not diverse from Plaintiff, which means this Court has no diversity jurisdiction.  *See* 28 U.S.C. § 1332(a)(1) (granting federal courts diversity jurisdiction in cases "between . . . citizens of different States" where the amount in controversy exceeds $75,000).  The Court also does not have diversity jurisdiction over the state-law deceptive practices claims because, even though Fannie Mae appears to be implicated by this claim, so too are the Realtor Defendants, and the Supreme Court has long "read the statutory formulation 'between . . . citizens of different States' to require complete diversity between all plaintiffs and all defendants."  *Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005) (citation omitted).  Thus, this Court has no original jurisdiction to adjudicate either claim.

jurisdiction").  Courts look to several factors in exercising their discretion, and "'in the usual

case in which all federal-law claims are eliminated before trial, the balance of factors to be

considered under the [supplemental] jurisdiction doctrine — judicial economy, convenience,

fairness, and comity — will point toward declining to exercise jurisdiction over the remaining

state-law claims.'"  *Valencia ex rel. Franco v. Lee*, 316 F.3d 299, 305 (2d Cir. 2003) (quoting

*Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

    There is nothing that separates this case from the usual case where courts typically

decline to exercise jurisdiction over state law claims when all federal claims are dismissed

before trial.  *See Dellutri v. Vill. of Elmsford*, --- F. Supp. 2d ----, No. 10-CV-1212, 2012 WL

4473268, at *17 (S.D.N.Y. Sept. 28, 2012) ("As all of Plaintiff's federal claims have been

dismissed, the Court declines to exercise supplemental jurisdiction over Plaintiff's state law

claims."); *see also Middleton v. United States*, No. 10-CV-6057, 2012 WL 394559, at *1

(E.D.N.Y. Feb. 7, 2012) (declining to exercise supplemental jurisdiction over state claims,

because no federal claims survived a motion to dismiss); *Williams v. Berkshire Fin. Grp., Inc.*,

491 F. Supp. 2d 320, 329 (E.D.N.Y. 2007) (same).  Accordingly, the remaining state law claims

are dismissed without prejudice.[7]

-------

    [7] The Court wishes to make Plaintiff aware that various statutes of limitations may
impose a time limit on his ability to refile the state law claims in New York state court, should
he wish to continue pursuing these claims.  In the event that the statutes of limitations have run
on any of the claims, federal law provides that Plaintiff has at least 30 days to refile the claims in
state court.  *See* 28 U.S.C. § 1367(d) ("The period of limitations for any claim asserted under
subsection (a) [of § 1367], and for any other claim in the same action that is voluntarily
dismissed at the same time as or after the dismissal of the claim under subsection (a), shall be
tolled while the claim is pending and for a period of 30 days after it is dismissed unless State law
provides for a longer tolling period.").  Some states extend that time period, and it appears that
New York has taken advantage of that and given plaintiffs six months from the time of dismissal
in federal court to refile in state court.  *See* N.Y. C.P.L.R. § 205 ("If an action is timely
commenced and is terminated in any other manner than by a voluntary discontinuance, a failure
to obtain personal jurisdiction over the defendant, a dismissal of the complaint for neglect to
prosecute the action, or a final judgment upon the merits, the plaintiff, or, if the plaintiff dies,

III. Conclusion

For the foregoing reasons, Defendants' Motions to Dismiss are granted in large part. This terminates all of Plaintiff's federal claims.[8] The remaining state-law claims are dismissed without prejudice because the Court declines to exercise supplemental jurisdiction over them.

The Clerk of Court is respectfully requested to terminate the pending motions, (Dkt. Nos. 34, 36), and close the case.

SO ORDERED.

DATED:     White Plains, New York
           March 13 , 2013

KENNETH M. KARAS
UNITED STATES DISTRICT JUDGE

---

and the cause of action survives, his or her executor or administrator, may commence a new action upon the same transaction or occurrence or series of transactions or occurrences within six months after the termination provided that the new action would have been timely commenced at the time of commencement of the prior action and that service upon defendant is effected within such six-month period."); *see also Murray v. Visiting Nurse Servs. of N.Y.*, 528 F. Supp. 2d 257, 281 (S.D.N.Y. 2007) (explaining the operation of 28 U.S.C. § 1367(d) and N.Y. C.P.L.R. § 205). The Court wishes to stress, however, that Plaintiff should not affirmatively rely on the Court's brief survey of the law in this area, and Plaintiff must conduct his own inquiry to determine the time in which he may refile his claims in state court.

[8] Plaintiff has now submitted three complaints, and, as explained in this Opinion, "the third is no closer to the first in stating a claim . . . upon which relief could be granted." *Williams*, 491 F. Supp. 2d at 328. Indeed, the Court is quite familiar with Plaintiff's claims, because, in addition to having read the various filings, the Court has conducted two pre-motion conferences where Plaintiff was given the opportunity to elaborate on his factual claims and his legal arguments. (*See* Unnumbered Dkt. Entries of January 25, 2012 and April 2, 2012.) Now, more than three years have passed since Plaintiff filed his initial Complaint, and it is clear that "the facts that plaintiff has pled are inconsistent with a [federal claim] . . ., so that the complaint's deficiencies are not subject to cure." *Williams*, 491 F. Supp. 2d at 328. Accordingly, the Court has discretion to dismiss the federal claims without giving Plaintiff yet another chance to amend. *See id.*; *see also Fulton v. Goord*, 591 F.3d 37, 45 (2d Cir. 2009) ("We are normally accommodating to motions for leave to amend pro se complaints, but may deny them 'when amendment would be futile.'" (quoting *Tocker v. Philip Morris Cos.*, 470 F.3d 481, 491 (2d Cir. 2006) (internal citation omitted)).